WILLIAM W. MUNSELL AND ANOTHER *vs.* GEORGE A. BALDWIN.

New Haven Co., June T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The plaintiffs agreed to furnish to subscribers an " illustrated history of the city of New Haven," which should contain a map of the city, showing ward boundaries, location of streets, parks, cemeteries, churches, public buildings, street railroads," etc. In a suit against a subscriber for the price it was held—

1. That the plaintiffs were bound under their agreement to furnish a map of substantial but not of absolute accuracy.
2. That the defendant had a right to introduce in evidence a published map of recognized accuracy for the purpose of comparing the plaintiffs' map with it, and showing that it was not substantially accurate.

[Argued June 21st—decided October 12th, 1888.]

ACTION to recover the price of a book sold and delivered to the defendant upon a subscription for it; brought to the Court of Common Pleas in New Haven County, and tried to the jury before *Deming, J.* Verdict for the plaintiffs, and appeal by the defendant for error in the rulings of the court. The case is fully stated in the opinion.

*E. P. Arvine* and *C. B. Matthewman*, for the appellant.

*W. A. Wright* and *H. L. Hotchkiss*, for the appellees.

PARK, C. J. This action is based upon the following contract :—

"ILLUSTRATED HISTORY OF THE CITY OF NEW HAVEN, CONNECTICUT.—This work is to contain a map of the city, showing ward boundaries, location of streets, parks, cemeteries, churches, public buildings, street railroads, etc. A history of New Haven from its commencement as a settlement to the present time, tracing in a general way the successive stages of its growth, and the development of its civil, religious, educational and social institutions, and its prominent business interests. A history of Yale College with its various departments. Also public and common schools of the city. The most prominent and important subjects will be selected for illustration, and inserted by special arrangement with interested parties. Price named in this agreement is for book alone. Size of the work imperial octavo (8x11 inches), cloth sides, leather back, and gilt edges. It will contain from 500 to 800 pages. Being strictly local, the work will be published only for subscribers.

"AGREEMENT.—We, whose names are hereunto subscribed, do severally agree to take of W. W. Munsell &

Co., their agents or assigns, the number of copies of their History of the City of New Haven, Conn., set opposite our respective names, and pay fifteen dollars per copy for the same when delivered at our residence or place of business. No promise made by an agent, which interferes with the intent of this contract, is valid. W. W. Munsell & Co., or assigns, on their part, agree to deliver to each subscriber, at the price above mentioned, the number of copies of said history subscribed for by him or her within a fair and reasonable time after its publication. ☞See Prospectus.

"W. W. MUNSELL & Co."

On the trial of the cause in the court below the defendant, in order to prove the allegations of his answer, that the book tendered him by the plaintiffs in fulfilment of their contract did not "contain a map of the city of New Haven, showing ward boundaries, location of streets, parks, cemeteries, churches, public buildings, street railroads," etc., as the contract required, offered the testimony of one Hill, who stated that he had been a civil engineer for fifteen years; that he had been city engineer for a number of years; that he was familiar with maps, and had made one of the city of New Haven ; and that a map, called the Bogart and Andrews map, was an accurate one of the city. He further testified in regard to certain inaccuracies of the plaintiffs' map ; and the defendant claimed to have proved by his testimony that it was grossly inaccurate ; that it did not show the ward boundaries, location of streets, parks, cemeteries, churches, public buildings and street railroads ; that certain portions of the city of New Haven had been omitted entirely; and that the streets were inaccurately located, and improperly named. The witness used the Bogart and Andrews map to refresh his recollection in pointing out to the jury the inaccuracies of the plaintiffs' map.

The defendant then offered in evidence the map the witness had used to refresh his recollection, and the one which he had stated accurately represented the city, in order that the jury might more thoroughly understand the witness,

and remember his testimony in regard to the errors he had described in the plaintiffs' map; and the defendant had pointed out the places where the errors might be found by certain red lines marked on the Bogart and Andrews map.

The plaintiffs objected to the admission of the map in evidence, on the ground that they had not agreed to furnish an accurate map of the city, but only that the book should contain a map of the city, showing its wards, streets, etc.; that is, as they claim, a map of substantial accuracy. The court excluded the evidence. In this we think the court erred.

Although the plaintiffs' contract did not require that they should furnish an accurate map, but one substantially correct, as the court properly charged, still the difficulty of determining in a closely balanced case whether the matter in dispute is on one side or the other of the line of substantial accuracy, is just as great as it would be if the line was drawn anywhere else.

No engineer or number of engineers could carry in their recollection all the streets of a great city like New Haven, their courses and distances and relations to each other, the ward boundaries, and location of parks, churches, public buildings, cemeteries and street railroads, so that they could determine whether a map of the city shown them was substantially correct or not; much less could a jury, strangers to the subject, determine the question by hearing the inaccuracies of the map verbally described. In all such cases there must be a standard to which the matter can be referred, to determine whether it is substantially correct, or grossly inaccurate. Indeed the plaintiffs' contract, upon the construction of it which they claim, makes a correct map of the city the only criterion by which the substantial correctness of their map can be determined. Suppose a farmer agrees to furnish substantially a ton of hay, or cord of wood, or one hundred bushels of potatoes, would he not make the standard of weight or measure, as the case may be, the test whether he fulfills his contract or not, and would he not

make that standard evidence on the subject? We think he would.

The view we have taken of this question renders it unnecessary to consider the other questions raised in the case.

There is error in the judgment appealed from and it is reversed, and a new trial is ordered.

In this opinion the other judges concurred.